**DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN**

| | | |
|---|---|---|
| **LISA CAMPBELL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil No. 2008-130** |
| | ) | |
| **PATRICK R. DONAHOE, POSTMASTER** | ) | |
| **GENERAL, UNITED STATES POSTAL** | ) | |
| **SERVICE,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

ATTORNEYS:

**Pedro K. Williams, Esq.**
Law Office of Frazer and Williams
St. Thomas, U.S.V.I.
     *For Lisa Campbell.*

**Jason T. Cohen, AUSA**
**Ronald W. Sharpe, USA**
United States Attorney's Office
St. Thomas, U.S.V.I.
     *For the United States.*


<u>**MEMORANDUM OPINION**</u>

**GÓMEZ, C.J.**

     Before the Court is the motion of the defendant, the United States, for summary judgment against the plaintiff, Lisa Campbell.

### I.    <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

     Lisa Campbell ("Campbell") is employed with the United States Postal Service ("USPS") as a retail clerk. In May of 2000, Campbell filed an Equal Employment Opportunity ("EEO")

*Campbell v. United States*
Civil No.  2008-130
Memorandum Opinion
Page 2

complaint against her immediate supervisors Laverne Francis

("Francis") and Earl Simmons ("Simmons") for failure to report

Campbell's sexual harassment complaint against her co-worker,

Charles Thomas. Campbell settled her complaint against the USPS.

As part of her settlement agreement, Campbell was transferred

from Aubrey C. Ottley Post Office ("Ottley") in St. Thomas,

USVI, to Havensight Post Office ("Havensight") in St. Thomas,

USVI.

In 2003, three years into Campbell's employment at

Havensight, Sidney Swan ("Swan") became Campbell's supervisor.

Swan worked at Ottley when Campbell filed her 2000 EEO complaint

against Francis and Simmons. (Second Am. Compl. ¶ 10, ECF No.

53-1.) Campbell alleges that when Swan became her supervisor at

Havensight, he "would alienate [her] from other employees and

nit-pick or unjustifiably criticize her for the most minute and

insignificant things, such as her water-bottle drinking habits."

(*Id.* at ¶ 11.) Campbell alleges that those actions by Swan

amounted to "harassment." (*Id.* at ¶ 12.) Campbell contacted

Postmaster Louis Jackson ("Jackson") and informed him of Swan's

alleged harassment and of her intention to file an EEO complaint

against Swan. (*Id.*) Campbell told Jackson that Swan was

harassing her in retaliation for her previous complaint against

*Campbell v. United States*
Civil No.  2008-130
Memorandum Opinion
Page 3

Francis and Simmons.

Thereafter, Jackson arranged for Campbell and Swan to meet with a dispute resolution specialist, Nancy Rivera ("Rivera"). The meeting led to a conflict resolution agreement between Swan and Campbell. The resolution required that Swan and Campbell avoid association, interaction, or discussion with one another.

In October of 2003, several advertisements were posted for positions in all postal stations in St. Thomas. Jackson advised Campbell to bid on one of the available positions in order to be placed at another postal station, instead of at Havensight with Swan. Campbell bid on a position at another station, but was unsuccessful. Campbell alleges that because she continued to have problems with Swan, Jackson decided to reassign Campbell to the Emancipation Garden Station Post Office ("EGS") in St. Thomas, USVI.

Two years later, in January of 2005, an advertisement was posted for positions at the Ottley location. Francis, Campbell's former supervisor, was responsible for posting the positions. Campbell alleges that she did not submit a bid for any of the Ottley positions. Thereafter, Francis sent Campbell a letter informing Campbell that she won her bid for placement at the Ottley post office location.

*Campbell v. United States*
Civil No.  2008-130
Memorandum Opinion
Page 4

Campbell filed an EEO complaint in January, 2005. She informed Postmaster Lu Austin ("Austin") that she received a placement for which she had not bid. Austin allowed Campbell to remain in her position at EGS. Campbell asserts that Austin came to an agreement with the American Postal Workers Union president, Valerie Williams ("Williams"), to allow Campbell to remain at EGS.

Subsequently, Rivera contacted Campbell inquiring as to whether she wanted to proceed with her EEO complaint. Campbell, having been allowed to remain at EGS, declined to proceed with her complaint.

Campbell was reassigned to Ottley in March of 2007. She filed an appeal of the reassignment with the Postal Service. In her appeal, Campbell asserted that her reassignment was a violation of a 2005 agreement between Austin and Williams that allowed Campbell to remain at EGS.

Campbell alleges that since her reassignment to Ottley,

33.   . . . she has continued to experience hostility and alienation. She has even received threats of bodily harm. She also learned that a representative of the union wanted to do her bodily harm.

. . .

35[.] Sonia Freeman, a regular with less seniority than plaintiff has, not been affected by any bids and

*Campbell v. United States*
Civil No.  2008-130
Memorandum Opinion
Page 5

has not been made to return to GPO but has remained at
the location of her choice, East End.

(Second Am. Compl. ¶¶ 33, 35.)

On or about March 3, 2008, the Postal Service issued a
determination stating that it did not have jurisdiction over
Campbell's claim. Campbell appealed the determination to the
U.S. Equal Employment Opportunity Commission ("EEOC").

Prior to receiving a final decision from the EEOC, Campbell
filed this action on October 7, 2008, against Patrick R.
Donahoe, Postmaster General of the United States. Count One of
the two-count second amended complaint alleges retaliation
pursuant to Title VII. Count Two alleges hostile work
environment under Title VII.

The EEOC issued a final decision on October 22, 2009. The
EEOC affirmed the decision of the Postal Service that it did not
have jurisdiction over Campbell's claim. Included in the EEOC's
decision is a notification to Campbell informing her of her
"right to file a civil action in an appropriate United States
District Court within ninety (90) calendar days from the date
[she] receive[s] this decision." (EEOC Oct. 22, 2009, Decision
3, ECF No. 53-3.)

The United States has moved for summary judgment. Campbell

*Campbell v. United States*
Civil No.  2008-130
Memorandum Opinion
Page 6

opposes.

## II. <u>DISCUSSION</u>

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Hersh v. Allen Products Co.*, 789 F.2d 230, 232 (3d Cir. 1986).

The movant has the initial burden of showing there is no genuine issue of material fact, but once this burden is met it shifts to the non-moving party to establish specific facts showing there is a genuine issue for trial. *Gans v. Mundy*, 762 F.2d 338, 342 (3d Cir. 1985). The non-moving party "may not rest upon mere allegations, general denials, or . . . vague statements . . . ." *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991). "[T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for

*Campbell v. United States*
Civil No.  2008-130
Memorandum Opinion
Page 7

trial." *Id.* In making this determination, this Court draws all

reasonable inferences in favor of the non-moving party. *See Bd.*

*of Educ. v. Earls*, 536 U.S. 822, 850 (2002); *see also Armbruster*

*v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994).

### III. ANALYSIS

**A. Count One: Retaliation**

In Count One of the second amended complaint, Campbell

alleges that "[t]he actions of defendant constitute[]

discrimination based upon retaliation in violation of Title VII

of the Civil Rights Act of 1964, as amended, 42 U.S.C., § 2000e

*et. seq.*" (Second Am. Compl. ¶ 38, ECF No. 53-1.)[1]

Title VII of the Civil Rights Act provides, in pertinent

part:

> It shall be an unlawful employment practice for an
> employer to discriminate against any of his employees
> or applicants for employment, . . . because he has
> opposed any practice made an unlawful employment
> practice by this subchapter, or because he has made a
> charge, testified, assisted, or participated in any
> manner in an investigation, proceeding, or hearing
> under this subchapter.

42 U.S.C. § 2000e-3.

"Title VII protects 'those who oppose discrimination made

---

[1] Campbell does not specify which actions allegedly constitute discrimination
based upon retaliation. The Court has identified five, generally pleaded,
distinct actions which Campbell alleges that representatives of the USPS
undertook against her. The Court will identify and review each of the actions
in turn.

*Campbell v. United States*
Civil No.  2008-130
Memorandum Opinion
Page 8

unlawful by Title VII.'" *Davis v. City of Newark*, 417 F. App'x
201, 202 (3d Cir. 2011) (quoting *Moore v. City of Philadelphia*,
461 F.3d 331, 341 (3d Cir. 2006)). "To establish a prima facie
case of retaliation under Title VII, a plaintiff must show that
'(1) she engaged in activity protected by Title VII; (2) the
employer took an adverse employment action against her; and (3)
there was a causal connection between her participation in the
protected activity and the adverse employment action.'" *Davis v.
City of Newark*, 285 F. App'x 899, 904 (3d Cir. 2008)
(hereinafter, "*Davis II*") (quoting *Nelson v. Upsala Coll.*, 51
F.3d 383, 386 (3d Cir. 1995)).

"Not every complaint entitles its author to protection from
retaliation under Title VII." *Davis*, 417 F. App'x at 202 (citing
*Burlington N. & Santa Fe Ry.*, 548 U.S. 53, 68 (2006)). "Rather,
only complaints about discrimination prohibited by Title VII —
that is, discrimination on the basis of race, color, religion,
sex, or national origin, 42 U.S.C. § 2000e-2 — constitute
'protected activity.'" *Davis*, 417 F. App'x at 203 (quoting
*Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 701-02 (3d Cir.
1995)). "Thus, for a complaint to amount to 'protected
activity,' it must implicate an employment practice made illegal
by Title VII." *Davis*, 417 F. App'x at 203 (quoting *Curay-Cramer*

*Campbell v. United States*
Civil No.  2008-130
Memorandum Opinion
Page 9

*v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 135

(3d Cir. 2006)). "General complaints of unfair treatment will

not suffice." *Davis*, 417 F. App'x at 203 (citing *Barber*, 68 F.3d

at 702).

 "With respect to 'protected activity,' the anti-retaliation

provision of Title VII protects those who participate in certain

Title VII proceedings (the 'participation clause') and those who

oppose discrimination made unlawful by Title VII (the

'opposition clause')." *Moore v. City of Philadelphia*, 461 F.3d

331, 341 (3d Cir. 2006) (citing *Slagle v. County of Clarion*, 435

F.3d 262, 266 (3d Cir. 2006)). "Whether the employee opposes, or

participates in a proceeding against, the employer's activity,

the employee must hold an objectively reasonable belief, in good

faith, that the activity they oppose is unlawful under Title

VII." *Moore*, 461 F.3d at 341 (citing *Clark County v. Breeden*,

532 U.S. 268, 271 (2001) (per curiam); *Aman v. Cort Furniture

Rental Corp.*, 85 F.3d 1074, 1085 (3d Cir. 1996)). "Moreover, the

employee's 'opposition' to unlawful discrimination must not be

equivocal." *Moore*, 461 F.3d at 341 (citing *Barber v. CSX

Distribution Servs.*, 68 F.3d 694, 702 (3d Cir. 1995)).

### i.  *Participation in Protected Activity*

 The first element that must be addressed to determine

*Campbell v. United States*
Civil No.  2008-130
Memorandum Opinion
Page 10

whether a prima facie case of retaliation under Title VII has

been made is whether the plaintiff participated in protected

activity. Here, it is undisputed that Campbell engaged in

protected activity by filing an EEO complaint for allegedly

discriminatory conduct on the basis of her sex. *See, e.g.*,

*Swanson v. Northwestern Human Services, Inc.*, 276 F. App'x 195,

196 (3d Cir. 2008) (finding that the employee, who had filed an

EEOC complaint on the basis of sexual harassment, "clearly

engaged in protected activity when he complained to his

supervisor and when he filed his EEOC complaint.")

### ii.  *Occurrence of an Adverse Employment Action*

The second element addresses whether an adverse employment

action occurred. The United States Court of Appeals for the

Third Circuit, in *Moore v. City of Philadelphia*, 461 F.3d 331

(3d Cir. 2006), has explained that,

> a plaintiff claiming retaliation under Title VII must
> show that a reasonable employee would have found the
> alleged retaliatory actions "materially adverse" in
> that they "well might have dissuaded a reasonable
> worker from making or supporting a charge of
> discrimination." [*Burlington N. & Sante Fe Ry. Co. v.
> White*, 548 U.S. 53, 126 S.Ct. 2405, 2415 (2006)].
>
>                          . . .
>
> In evaluating whether actions are materially adverse,
> we must remain mindful that "it is important to
> separate significant from trivial harms" because "[a]n

*Campbell v. United States*
Civil No.  2008-130
Memorandum Opinion
Page 11

> employee's decision to report discriminatory behavior
> cannot immunize that employee from those petty slights
> or minor annoyances that often take place at work and
> that all employees experience." *Id. See also Jensen,*
> 435 F.3d at 451 ("[Title VII] does not mandate a happy
> workplace."). Furthermore, we must "identify what
> [materially adverse actions] . . . a reasonable jury
> could link to a retaliatory animus" for each
> individual officer. *See Jensen,* 435 F.3d at 449-50.
> Finally, we must determine if the plaintiffs tendered
> sufficient evidence to overcome the non-retaliatory
> explanation offered by their employer. *Krouse,* 126
> F.3d at 500-01. These determinations depend on the
> "totality of the circumstances," *Jensen,* 435 F.3d at
> 452, as "[a] play cannot be understood on the basis of
> some of its scenes but only on its entire performance,
> and similarly, a discrimination analysis must
> concentrate not on individual incidents, but on the
> overall scenario." *Andrews v. City of Phila.,* 895 F.2d
> 1469, 1484 (3d Cir. 1990).

*Moore v. City of Philadelphia*, 461 F.3d 331, 341, 46 (3d Cir.

2006).

More recently, in *Ponton v. AFSCME, AFL-CIO*, 395 F. App'x

867 (3d Cir. 2010), the Third Circuit had occasion to address

whether there was a materially adverse action in that case.

There, Donnell Ponton ("Ponton"), an African American man, was

employed as a laborer by the City of Philadelphia ("the City"),

from 1999 to 2008. At some point during his employment, Ponton

filed charges of racial discrimination against the City and his

labor union, AFSCME Local 427 ("the Union"). Thereafter, in

2009, Ponton filed a complaint in federal district court against

*Campbell v. United States*
Civil No.  2008-130
Memorandum Opinion
Page 12

the City and the Union. In his complaint, Ponton's allegations
included retaliation and hostile work environment based on his
race. Specifically, Ponton alleged that "in November 2006, while
being reassigned to a different location for leaf collection,
[his supervisor] refused to give Ponton a route sheet and stated
emphatically, with curse words, that he did not want Ponton
working in his yard." *Id*. at 874. Ponton also alleged that he
received "a negative performance evaluation [in retaliation] for
testifying before the Civil Service Commission." *Id*.
Subsequently, the City and the Union moved separately for
summary judgment. The district court granted each of the
motions. Ponton appealed.

On appeal, the United States Court of Appeals for the Third
Circuit addressed each of Ponton's allegations as to his
retaliation claim. The court noted that after Ponton's
supervisor refused to give Ponton a route sheet, Ponton reported
the incident. Thereafter, Ponton's supervisor "promptly gave him
a route sheet." *Id*. The Circuit found that the "encounter is not
actionable because it was not a 'materially adverse' action."
*Id*. (citing *Moore*, 461 F.3d at 341). The *Ponton* court went on to
explain that "Ponton did not suffer any repercussions, the
incident was remedied and Ponton promptly received the route

*Campbell v. United States*
Civil No.  2008-130
Memorandum Opinion
Page 13

sheet, and moreover, there is no evidence from which a

reasonable fact-finder could conclude that a reasonable employee

would have been dissuaded by the incident from complaining about

unlawful conduct." *Ponton*, 395 F. App'x at 874.

The Third Circuit then addressed Ponton's claim of

retaliation involving his performance evaluation. The Circuit

stated:

> we agree with the City that the evaluation did not
> constitute a materially adverse action inasmuch as
> Ponton received an overall rating of "satisfactory,"
> the highest rating available. *See Moore*, 461 F.3d at
> 341. While the evaluation did note that there were
> occasions when Ponton refused to "follow directives,"
> the record does not reasonably support a finding that
> the evaluation overall was materially adverse.
> Further, as the District Court explained, even if
> Ponton stated a *prima facie* case based on this
> incident, he did not create a record that would cast
> any doubt upon the validity of the evaluation, and,
> therefore, he failed to show that the City's stated
> reasons for criticizing his ability to follow
> directives were pretextual.

*Ponton*, 395 F. App'x at 874.

*Ponton* is instructive here. Indeed, Campbell has made five

distinct allegations of discriminatory conduct in her second

amended complaint. First, Campbell alleges that she was

alienated and criticized. Second, Campbell alleges that she won

a reassignment bid for which she did not apply. Third, Campbell

alleges that she was improperly reassigned. Fourth, Campbell

*Campbell v. United States*
Civil No.  2008-130
Memorandum Opinion
Page 14

alleges that she was threatened with bodily harm. Fifth,

Campbell alleges that the defendant failed to take appropriate

action after learning of threats against Campbell. The Court

will address each of the allegations in turn.

### a. Alienation and Criticism

Campbell alleges that "Swan would alienate plaintiff from

other employees and nit-pick or unjustifiably criticize her for

the most minute and insignificant things, such as her water-

bottle drinking habits." (Second Am. Compl. ¶ 11.)

Though nitpicking and criticism by an employer might be

annoying to a worker, the Court is not convinced that it is the

type of behavior that would dissuade a "reasonable worker from

making or supporting a charge of discrimination." *Moore*, 461

F.3d at 341; *see also Burlington Northern*, 548 U.S. at 68 ("An

employee's decision to report discriminatory behavior cannot

immunize that employee from those petty slights or minor

annoyances that often take place at work and that all employees

experience.") Indeed, Campbell herself details in her second

amended complaint that because of "Swan's harassment, plaintiff

wrote to Postmaster Louis Jackson ("Jackson") and informed him

of Swan's conduct and her intent to file a complaint against

Swan." (Second Am. Compl. ¶ 12.) Swan's actions did not dissuade

*Campbell v. United States*
Civil No.  2008-130
Memorandum Opinion
Page 15

Campbell from complaining. The Court does not find that the actions alleged rise to the level of "materially adverse."

### b. Notification of Successful Bid

Campbell alleges that, in January of 2005, "despite the fact that plaintiff never posted on any such bid, Francis wrote plaintiff a letter congratulating plaintiff on her successful bid and notifying her of her placement at [Ottley]." (Second Am. Compl. ¶ 21.) After Campbell received the letter from Francis, she told Austin about the letter. She explained to Austin that she did not wish to return to Ottley. As a result, Austin arranged for Campbell to remain at EGS, as she preferred.

Similar to the appellant in *Ponton*, Campbell did not actually "suffer any repercussions." 395 F. App'x at 874. Indeed, the incident regarding the letter was promptly remedied. Moreover, "there is no evidence that a reasonable employee would have been dissuaded by the incident from complaining about unlawful conduct." *Ponton*, 395 F. App'x at 874.

While she *threatened* to file an EEO complaint for Swan's alleged nit-picking, after receiving Francis's letter, Campbell actually did file an EEO complaint. Just as a reasonable employee would not be dissuaded from complaining, Campbell was clearly not dissuaded from complaining by Francis's action in

Campbell v. United States
Civil No.  2008-130
Memorandum Opinion
Page 16

sending the letter.

### c. Reassignment to Ottley Location

Campbell asserts that, "[c]ontrary to what plaintiff agreed and what she was led to believe and in violation of the agreement made by OIC Postmaster Austin, plaintiff was 'assigned' to [Ottley] in March 2007" (the "March 2007 reassignment"). (Second Am. Compl. ¶ 26.) Thereafter, on or about June 29, 2007, Campbell "filed an appeal of the March 2007 reassignment with the Postal Service pursuant to the Equal Employment Opportunity (EEOC) Regulations at 29 CFR §1614 [sic]." (Second Am. Compl. ¶ 27.)

A reassignment may constitute a "materially adverse" action. *See generally Hulsey v. Pride Restaurants, LLC*, 367 F.3d 1238, 1245 (11th Cir. 2004) (defining a tangible employment action as "a significant hiring, firing, failing to promote, *reassignment* with significantly different responsibilities, or a decision causing a significant change in benefits"). Such an instance arose in *Burlington Northern v. White*, 548 U.S. 53 (2006).

In *Burlington*, the Supreme Court of the United States had occasion to decide whether Shelia White ("White") was retaliated against. White was hired as a track laborer at Burlington

*Campbell v. United States*
Civil No.  2008-130
Memorandum Opinion
Page 17

Northern & Santa Fe Railway Company ("Burlington"). Soon

thereafter, a forklift operator position became vacant. Because

of White's past experience as a forklift operator, Brown

reassigned White to the vacant position.

Subsequently, White complained to Burlington officials that

her immediate supervisor, Bill Joiner ("Joiner"), had made

inappropriate comments to her and had repeatedly told her that a

woman should not be working in her position. Joiner was

suspended for 10 days. After sharing the news of Joiner's

suspension with White, Brown reassigned White back to the

position of track laborer. Brown explained that the reassignment

was prompted by complaints from White's co-workers that "a more

senior man" should have the "less arduous and cleaner job" of

forklift operator. *Burlington*, 548 U.S. at 58. Thereafter, White

filed an EEO complaint, alleging that her reassignment was

retaliatory.

On writ of certiorari, the Supreme Court of the United

States explained that

>   . . . Almost every job category involves some
> responsibilities and duties that are less desirable
> than others. Common sense suggests that one good way
> to discourage an employee such as White from bringing
> discrimination charges would be to insist that she
> spend more time performing the more arduous duties and
> less time performing those that are easier or more

Campbell v. United States
Civil No. 2008-130
Memorandum Opinion
Page 18

>       agreeable. . . .
>
>       . . . here, the jury had before it considerable
>       evidence that the track laborer duties were "by all
>       accounts more arduous and dirtier"; that the "forklift
>       operator position required more qualifications, which
>       is an indication of prestige"; and that "the forklift
>       operator position was objectively considered a better
>       job and the male employees resented White for
>       occupying it." 364 F.3d, at 803 (internal quotation
>       marks omitted). Based on this record, a jury could
>       reasonably conclude that the reassignment of
>       responsibilities would have been materially adverse to
>       a reasonable employee.

Burlington Northern, 548 U.S. at 70-71.

        Here, the United States does not point to any record

evidence which might allow the Court to compare the differences

between Campbell's EGS assignment and her Ottley assignment.

Specifically, the United States does not point to any evidence

that the Ottley assignment was equivalent to the EGS assignment

in such observable aspects as perceived prestige, working

conditions, scheduled hours, or duties. As such, the Court finds

that the difficulty in making a comparison between the two

assignments posed by the deficient record makes it unclear

whether the March 2007 reassignment was indeed "materially

adverse."

        Assuming arguendo that the March 2007 reassignment was

"materially adverse," the Court will analyze the March 2007

*Campbell v. United States*
Civil No.  2008-130
Memorandum Opinion
Page 19

reassignment under the next element required to establish a

Title VII retaliation claim – the "causal link" element.

The Third Circuit has explained that,

[t]o establish the third element of the prima facie
case, as clarified in *Burlington Northern*, a plaintiff
must show a causal connection between the plaintiff's
opposition to, or participation in proceedings
against, unlawful discrimination and an action that
might have dissuaded a reasonable worker from making
or supporting a charge of discrimination. "Many may
suffer . . . harassment at work, but if the reason for
that harassment is one that is not proscribed by Title
VII, it follows that Title VII provides no relief."
*Jensen v. Potter*, 435 F.3d 444, 449 (3d Cir. 2006).
This third element "identif[ies] what harassment, if
any, a reasonable jury could link to a retaliatory
animus." *Id.* at 449-50. "The ultimate question in any
retaliation case is an intent to retaliate *vel non*."
*Id.* at 449 n.2.

*Moore v. City of Philadelphia*, 461 F.3d 331, 342 (3d Cir. 2006)

(alteration in the original). "A causal link between protected

activity and adverse action may be inferred from an unusually

suggestive temporal proximity between the two, an intervening

pattern of antagonism following the protected conduct, or the

proffered evidence examined as a whole." *Peace-Wickham v. Walls*,

409 F. App'x 512, 522 (3d Cir. 2010).

In its motion for summary judgment, the United States

argues that "the allegedly retaliatory assignment in March 2007

*Campbell v. United States*
Civil No.  2008-130
Memorandum Opinion
Page 20

was over two years after Plaintiff's most-recently-filed prior

claim of discrimination." (Def.'s Br. in Supp. of Mot. Summ. J.

4, ECF No. 95.) The United States asserts that the time period

between the two events is too lengthy "to be suggestive of a

causal link." *Id*. In support of its contention, the United

States has provided to the Court a printout of an EEO Complaints

Report, run on September 17, 2007. (ECF No. 96-3.) The report

indicates that Campbell initiated EEO complaints in May of 2000,

January of 2005, and June of 2007.

The United States also argues that acting Postmaster David

Stevens ("Stevens"), the person who signed the letter which made

official the March 2007 reassignment, was not aware of

Campbell's prior protected activity at the time of the

reassignment. As such, the United States argues that there could

not have been any intention to retaliate. In support of its

argument, the United States directs the Court to Stevens's

affidavit. In his affidavit, Stevens states

> 2. Presently I[]am the Officer in charge, I have a
> manager then a supervisor that Ms. Campbell reports
> to.

> 3. . . . I am not aware of the complainant having any
> other EEO activity.

*Campbell v. United States*
Civil No.  2008-130
Memorandum Opinion
Page 21

4. I have not been in any other prior EEO activities or activity complainant has filed.

5. I became aware of the complainant [sic] EEO activity briefly on 6/08/2007 in a Redress meeting.

6. . . . I am not aware of Ms. Campbell been [sic] harassed or threaten [sic], neither was brought to my attention.

. . .

11. I don't have any documentation or information on a [sic] alleged threat or harassment been made [sic] to complainant.

(Stevens Aff. ¶¶ 2-6, 11, ECF No. 96-16.)

The evidence proffered by the United States shows that at least two years passed from the time of Campbell's most recent EEO filing in January, 2005, until the allegedly retaliatory action which took place in March of 2007. The Court finds the two-year time period between Campbell's most recent protected employment activity and the March 2007 reassignment is, "without additional evidence, insufficient to raise an inference of causation." *Andreoli v. Gates*, 482 F.3d 641, 650 (3d Cir. 2007) (finding that four months between the most recent protected activity and the alleged adverse action was "insufficient to raise an inference of causation"); *see also Williams v. Phila. Housing Auth. Police Dep't*, 380 F.3d 751, 760 (3d Cir. 2004)

*Campbell v. United States*
Civil No.  2008-130
Memorandum Opinion
Page 22

(finding that two months between the protected employment activity and the alleged adverse action was not "unusually suggestive" temporal proximity to support finding a causal link).

The evidence also shows that Stevens was not aware of Campbell's prior protected activity at the time of the March 2007 reassignment. Retaliation necessarily requires knowledge of protected activity by the alleged retaliator. *Jensen v. Potter*, 435 F.3d 444, 449 n.2 (3d Cir. 2006) ("The ultimate question in any retaliation case is an intent to retaliate *vel non*"), *overruled in part on other grounds* by *Burlington Northern*, 548 U.S. at 67-68. A fact-finder would be hard-pressed to find that Stevens intended to retaliate on the basis of something which was not even known to him. As such, the evidence points to a finding that there was no causal connection between the protected employment activity and the March 2007 reassignment. *See, e.g., Andreoli*, 482 F.3d at 649 (declining to find a causal connection where the employee had "not proffered any evidence that the supervisors responsible for the alleged adverse actions were aware that [the employee] had informally complained to the

*Campbell v. United States*
Civil No.  2008-130
Memorandum Opinion
Page 23

EEO office").[2]

### d. Threats Made by Union Representative

Campbell alleges that since her assignment at Ottley in March of 2007, she "learned that a representative of the union wanted to do her bodily harm." (Second Am. Compl. ¶ 33.)

The United States, in its statement of undisputed facts, concedes that, "[i]n May 2007, a co-worker told Campbell's uncle that she wanted to do bodily harm to Campbell." (Stmt. Undisp. Facts ¶ 29, ECF No. 96) (citing Campbell Dep., p. 73, ECF No. 1; Campbell Aff., Oct. 18, 2007, USPS000584, ECF No. 15.) The

---

[2] Campbell also alleges that "Sonia Freeman, a regular with less seniority than plaintiff has, [sic] not been affected by any bids and has not been made to return to [Ottley] but has remained at the location of her choice, East End." (Second Am. Compl. ¶ 35.) It seems that Campbell is attempting to assert a claim for disparate treatment. Such a claim is usually asserted in a complaint for discrimination. Significantly, Campbell's complaint is one for retaliation.

Looking at Campbell's allegation through a retaliation lens, the Court notes that the United States has pointed to evidence which tends to detract from Campbell's allegation. Indeed, in its motion for summary judgment, the United States directs the Court to a document captioned as, "Notification of Personnel Action," for Sonia Freeman. (ECF No. 96-22.) The document indicates that Freeman began working for the USPS in 1995. *Id.* It also indicates that as of September 24, 2007, Freeman was working at the East End Post Office as a Sales and Service Distribution Associate. *Id.* The United States also directs the Court to a transcript of Campbell's deposition testimony. During her deposition, Campbell admitted that Freeman had been employed by the USPS longer than Campbell. (Campbell Dep. 83-85, ECF No. 96-1.) Campbell also admitted that Freeman has been reassigned to the Ottley location as well. (*Id.*)

To the extent that Campbell asserts a retaliation claim as to her alleged maltreatment in comparison to Freeman's treatment, the Court finds that there is no evidence from which a reasonable fact-finder could conclude that such treatment would have dissuaded a reasonable employee in Campbell's shoes from complaining about unlawful conduct.

*Campbell v. United States*
Civil No.  2008-130
Memorandum Opinion
Page 24

United States also concedes that "Campbell told this to the postal investigator, and he told her that there was nothing he could do about it because it was said off the postal property." (Stmt. Undisp. Facts ¶ 29, ECF No. 96) (citing Campbell Dep., p. 73, ECF No. 1.)

A threat of bodily violence to an employee subsequent to that employee undertaking a protected activity certainly could be categorized as "materially adverse."[3] *See generally Gaujacq v. EDF, Inc.*, 601 F.3d 565, 578 (D.C. Cir. 2010) ("A threatening verbal statement, standing alone, might well constitute a materially adverse action."). Assuming without deciding that the threat against Campbell was materially adverse, to be retaliation, the threat must be causally linked to the protected action.

The evidence proffered by the United States shows that at least two years passed from the time of Campbell's most recent EEO filing in January, 2005, until the allegedly retaliatory action which took place in May of 2007. While the alleged threat of bodily harm certainly gives the Court pause, the two-year

---

[3] It is not clear from the record whether there was any employer action involved. Indeed, there is no record evidence showing that any supervisor or top USPS official directed, encouraged, or joined in the alleged threats against Campbell.

*Campbell v. United States*
Civil No.  2008-130
Memorandum Opinion
Page 25

time period between Campbell's most recent protected employment

activity and the alleged threat in May of 2007, is, "without

additional evidence, insufficient to raise an inference of

causation." *Andreoli v. Gates*, 482 F.3d 641, 650 (3d Cir. 2007)

(finding that four months between the most recent protected

activity and the alleged adverse action was "insufficient to

raise an inference of causation"); *see also Williams v. Phila.*

*Housing Auth. Police Dep't*, 380 F.3d 751, 760 (3d Cir. 2004)

(finding that two months between the protected employment

activity and the alleged adverse action was not "unusually

suggestive" temporal proximity to support finding a causal

link).

### e. Alleged Failure to Address Threats

Campbell next alleges that she "informed the postal

investigator of the threats," but he failed to remedy the

problem. (Second Am. Compl. ¶ 34.) An employer's failure to

address a threat by one employee to another might reasonably

dissuade the threatened employee from making or supporting a

charge of discrimination. *See, e.g.*, *Rochon v. Gonzales*, 438

F.3d 1211, 1219 (D.C. Cir. 2006) (finding that the FBI's refusal

to investigate death threats made by a federal prison inmate

against an FBI agent, contrary to the bureau's standard

*Campbell v. United States*
Civil No.  2008-130
Memorandum Opinion
Page 26

practice, was materially adverse). Assuming arguendo that the

postal investigator's refusal to address the threat against

Campbell rises to the level of "materially adverse," the Court

will move on to the "causal link" prong.

The United States points to the lack of temporal connection

from the time of Campbell's most recent EEO filing in January of

2005, and the investigator's May, 2007, refusal to address

Campbell's allegation of being threatened. The Court notes that

the more than two year gap between the protected activity and

the alleged adverse action is not "unusually suggestive"

temporal proximity to support finding a causal link. *See*

*generally Williams*, 380 F.3d at 760 (finding that a two month

lag between the protected activity and the alleged adverse

employment action did not support a finding that a "causal link"

existed).

Even assuming arguendo that a causal link does exist, it is

not clear that Campbell would prevail under the *McDonnell*

*Douglass Corp. v. Green*, 411 U.S. 792 (1973) ("*McDonnell*

*Douglass*"), burden shifting scheme. *See generally Moore*, 461

F.3d at 342 ("If the employee establishes this prima facie case

of retaliation, the familiar *McDonnell Douglas* approach

applies . . ."). Under that scheme, the burden shifts to the

*Campbell v. United States*
Civil No.  2008-130
Memorandum Opinion
Page 27

employer to advance a "legitimate, non-retaliatory reason" for his conduct. *McDonnell Douglass*, 411 U.S. at 802. Here, the investigator properly advanced such a reason. Indeed, the employer's stated reason for its failure to act on the alleged threat, as corroborated by Campbell's second amended complaint, is that there was nothing the investigator could do "as long as there was no occurrence that actually happened at the work site." (Second Am. Compl. ¶ 34.)

The Court has carefully considered each of the claims asserted in Campbell's second amended complaint regarding retaliation. The Court has also carefully considered the evidence proffered by the United States in support of its motion for summary judgment. Based on the Court's careful consideration, it finds that the United States has met its initial burden of proof. The burden now shifts to Campbell to show that there exists a genuine issue of material fact.

Campbell directs the Court to her own deposition and affidavit, as well as to a January 25, 2005, letter from LaVerne Francis. The United States also directed the Court to Francis's letter in its motion papers. The United States does not dispute that Francis wrote the letter. The United States does not dispute that Campbell did not, in January of 2005, bid on the

*Campbell v. United States*
Civil No.  2008-130
Memorandum Opinion
Page 28

job which the letter referenced.

Campbell cites to her own deposition testimony in support of her argument that Stevens "was aware of Campbell's 2000 settlement because that settlement affected Campbell's seniority and that of several others." (Campbell's Opp. to Mot. for Summ. J. 4, ECF No. 97.) Specifically, she cites to the following testimony (also cited to by the United States),

> Q. Why did you say that, why do you know that he knew?
> A. Because my settlement in 2000 I became a regular from the USPS and all the offices were affected. I had less seniority than people above me therefore had to be granted seniority. So all the offices were affected.
> Q. From 2000. So you're saying - - is that the only reason, is there anything else that causes you to say he knew about your prior EEO activities?
> A. If there is anything else, no. Yes, it is a small island, people talk. People communicate. It is the Post Office, people, supervisors, employees, people talk.
> Q. Did David Stevens ever tell you before March 2007, did he ever talk to you about your prior EEO activity?
> A. He didn't like me much.
> Q. Did he ever tell, did he ever talk to you about your prior EEO activity prior to March of 2007?
> A. No, I wasn't allowed to talk to anyone about it.

(Campbell May 12, 2012, Dep. 63, ECF No. 96-1.)

Campbell also cites to her August 13, 2007, affidavit:

> Q5. Management officials were both aware of my other EEO activities. Mr. David Stevens was aware because we discussed it previously and he stopped speaking to me for several years after my first EEO. Mr. David Stevens was aware of my second was aware of my second

*Campbell v. United States*
Civil No.  2008-130
Memorandum Opinion
Page 29

> [sic] EEO because I was sent back to Alvaro Delugo
> (Emancipation Garden). Postmaster Robert Allen was
> aware because he stated that he had done an inquiry
> (Please refer to document enclosed dated June 14, 2007
> from Nancy Rivera) which all are not true. Exhibit 15
> Q6. I have not cit[ed] any of these management
> officials in any of my other EEO cases. . . .

(Campbell Aug. 13, 2007, Aff., ECF No. 96-14.)

Campbell's affidavit does not provide any timeline for the events which she describes. Indeed, it is unclear from reading Campbell's affidavit whether David Stevens and Robert Allen were aware of Campbell's EEO activities *prior to* the March 2007 reassignment. Campbell's bare assertions regarding the alleged knowledge of Postal officials that Campbell had engaged in prior EEO protected actions, without more specificity, cannot sustain the shifted burden of proof. *See generally, Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991)(explaining that the non-moving party "may not rest upon mere allegations, general denials, or . . . vague statements . . . .")

Indeed, the record is devoid of evidence that the alleged retaliators knew about Campbell's prior EEO claims at the time of the alleged retaliatory conduct in March, 2007. As such, there is no basis upon which to find that there existed any intent to retaliate against Campbell for her EEO claims. Campbell has failed to meet her burden of proof.

*Campbell v. United States*
Civil No.  2008-130
Memorandum Opinion
Page 30

Thus, the Court finds that there are no material facts in dispute and the United States is entitled to judgment as a matter of law on Campbell's retaliation claim.

**B. Count Two: Hostile Work Environment**

In Count Two of the second amended complaint, Campbell alleges that "the conduct of defendant constitutes discrimination based upon a hostile work environment because of her sex, race, color and national origin, and in retaliation for her complaints of discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C., § 2000e *et. seq.*" (Second Am. Compl. ¶ 41.)

"The elements of a hostile work environment claim brought under Title VII are well established. A plaintiff seeking to hold her employer liable must prove . . . : (1) that she suffered intentional discrimination because of her [gender]; (2) that the discrimination was pervasive and regular; (3) that the discrimination detrimentally affected the plaintiff; (4) that the discrimination would have detrimentally affected a reasonable person of the same [gender]; and (5) a basis for respondeat superior liability." *Page v. City of Pittsburgh*, 114 F. App'x 52, 54 (3d Cir. 2004) (citing *Kunin v. Sears Roebuck & Co.*, 175 F.3d 289, 293 (3d Cir. 1999)). "The Supreme Court has

*Campbell v. United States*
Civil No.  2008-130
Memorandum Opinion
Page 31

made it clear that '"simple teasing," offhand comments, and isolated incidents (unless extremely serious)' are not actionable under Title VII." *Page*, 114 F. App'x at 54 (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 778 (1998)). "Instead, the harassing behavior must be 'sufficiently severe or pervasive to alter the conditions of [plaintiff's] employment.'" *Page*, 114 F. App'x at 53 (alteration in the original) (citing *Pennsylvania State Police v. Suders*, 542 U.S. 129, 124 (2004)).

The United States argues that Campbell has failed to exhaust her administrative remedies as to her claims of hostile work environment on the basis of race, color, and national origin. Specifically, it argues that "Campbell checked off the 'Sex: Female' and 'Retaliation: Previous EEO Complaints' categories, but did not check off race, color, or national origin discrimination, or allege any specific facts of race, color, or national origin discrimination in the narrative section of her EEO complaint." (Def.'s Br. in Supp. Mot. Summ. J. 9, ECF No. 95.) As such, the United States argues that "neither the EEOC nor the agency was put on notice of these claims, and neither the EEO Investigation Report, nor the Final Agency Decision addressed them." *Id*.

"The purpose of requiring exhaustion is to afford the EEOC

*Campbell v. United States*
Civil No.  2008-130
Memorandum Opinion
Page 32

the opportunity to settle disputes through conference,

conciliation, and persuasion, avoiding necessary action in

court." *Atol v. Perry*, 82 F.3d 1291, 1296 (3d Cir. 1996).

> The relevant test in determining whether [a plaintiff]
> was required to exhaust her administrative remedies
> . . . is whether the acts alleged in the subsequent
> Title VII suit are fairly within the scope of the
> prior EEOC complaint, or the investigation arising
> therefrom.

*Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir. 1984) (per

curiam) (holding that the plaintiff's retaliation suit was not

barred for failure to exhaust administrative remedies where the

core grievances in suit and the earlier EEOC complaint were the

same: retaliation). At the same time, it is well established

that "[r]equiring a new EEOC filing for each and every

discriminatory act would not serve the purposes of the statutory

scheme where the later discriminatory acts fell squarely within

the scope of the earlier EEOC complaint or investigation." *Atol

v. Perry*, 82 F.3d 1291, 1295 (3d Cir. 1996).

In support of its motion for summary judgment, the United

States directs the Court to: Campbell's 2007 EEO complaint, (ECF

No. 96-10); Campbell's amendment of "Issues to be Investigated,"

(ECF No. 96-11); the resulting EEO Investigation Report, (ECF

No. 96-12); and the Final Agency Decision, (ECF No. 96-13.) The

*Campbell v. United States*
Civil No.  2008-130
Memorandum Opinion
Page 33

documents show that Campbell identified "sex" and "retaliation"

as the only bases for her EEO complaint.

The United States argues that "Campbell admitted during her

deposition that her claims of discrimination based on race,

color, and national origin were unsupported and without any

evidentiary basis." (Def.'s Br. in Supp. Mot. Summ. J. 9, ECF

No. 95.) In support of that argument, the United States directs

the Court to Campbell's deposition testimony, (ECF No. 96-1.)

A review of Campbell's deposition testimony corroborates

the argument by the United States:

> Q. Do you think race, color or national origin played
> any part at all in the hostile work environment you
> are claiming?
>
> A. Not the race and color. And I am not so sure about
> the national origin. Not the race or color.
>
> Q. With respect to the national origin other than some
> people thinking you were a Yankee until you corrected
> them, are there any other instances where you feel
> like you have been discriminated against because of
> your national origin?
>
> A. No.

(Campbell's May 15, 2012, Dep. 100-01, ECF No. 96-1.)

Campbell's claim for hostile work environment, as asserted

in her second amended complaint, alleges discrimination based on

her sex, race, color, and national origin. Her EEO complaint

*Campbell v. United States*
Civil No.  2008-130
Memorandum Opinion
Page 34

alleged a claim for hostile work environment on the bases of

only retaliation and her sex. Neither her sex-based allegation,

to the extent that any specifics exist, nor her retaliation

allegations fairly encompass a claim for discrimination based on

race, color, or national origin. *Cf*. *Antol*, 82 F.3d at 1296

(holding that the plaintiff failed to exhaust his administrative

remedies where his complaint asserted gender discrimination and

his EEOC claim asserted disability discrimination).

     The United States also argues that "Campbell cannot

establish that she was subjected to a hostile work environment

*because of* her gender or prior EEO activity." (Mem. Supp. Mot.

Summ. J. 10.) In support of its argument, the United States

directs the Court to Campbell's affidavit and deposition

testimony, Stevens's affidavit, and DeWindt's affidavit.

     The affidavits discuss various incidents concerning

administrative matters such as Campbell's various requests for

leave. There is nothing in any of the affidavits or deposition

testimony which even hints that Campbell's gender, or previous

EEO complaints, played a factor in any of the administrative

matters. Additionally, the evidence shows that the actions taken

by the alleged harassers were not severe or pervasive. It also

shows that there is no basis upon which to find that the alleged

*Campbell v. United States*
Civil No.  2008-130
Memorandum Opinion
Page 35

harassers acted with any discriminatory intent. Title VII does not guarantee a perfect workplace. Indeed, the Supreme Court and the Third Circuit have held that "offhand comments, and [non-serious] isolated incidents" are not actionable under Title VII. *Abramson v. William Paterson College of New Jersey*, 260 F.3d 265, 280 (3d Cir. 2001) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)); *Pa. State Police v. Suders*, 542 U.S. 129 (2004). Campbell's allegations are the types of petty squabbles and minor workplace incidents that courts have held are not actionable and not sufficient to constitute a hostile work environment.

Based on the evidence, the Court finds that the United States has met its initial summary judgment burden. The burden of persuasion thus shifts to Campbell to show the existence of some genuine issue of material fact.

In her opposition, Campbell argues for the first time that she, as a female, was treated disparately as compared to Swan, a male. Campbell goes on to argue that such disparate treatment "demonstrates that Campbell's sex was also a factor in her discriminatory treatment." (Opp'n Mot. Summ. J. 11, ECF No. 97.) Significantly, Campbell offers no *evidence* supporting a claim for sex-based discrimination. Campbell offers no evidence of any

*Campbell v. United States*
Civil No.  2008-130
Memorandum Opinion
Page 36

disparate or preferential treatment of Swan by the defendant.
Indeed, Campbell "may not rest upon mere allegations, general
denials, or . . . vague statements . . . ." *Quiroga v. Hasbro,*
*Inc.*, 934 F.2d 497, 500 (3d Cir. 1991). As such, to the extent
that the Court may address Campbell's allegation which was
raised for the first time in her opposition to the defendant's
motion for summary judgment, the Court finds that Campbell has
failed to meet her burden as to discrimination on the basis of
sex.

Campbell offers no evidence supporting any of her claims
for hostile work environment. As such, Campbell has failed to
meet her burden of proof.

The Court finds that the United States is entitled to
summary judgment on Campbell's claim of hostile work
environment.

### IV. CONCLUSION

For the reasons discussed above, the Court will grant the
motion for summary judgment by the United States. An appropriate
judgment follows.

S\_____
**Curtis V. Gómez**
**Chief Judge**